## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JASON MEE,**
*individually and on behalf of a class of*
*similarly situated persons,*

     *Plaintiff,*

     v.

**CLARITY SERVICES, INC.,**
**ISHWAASWI, LLC,**
**MONEYLION, LLC,** *and*
**MONEYLION TECHNOLOGIES,**
**INC.,**

     *Defendants.*

Case Number: 3:24-cv-00542-MMH-JBT

**JURY TRIAL DEMANDED**

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Jason Mee ("Mr. Mee"), on behalf of himself and all similarly situated individuals, by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Clarity Services, Inc. ("Clarity"), Ishwaaswi, LLC ("Ishwaaswi"), MoneyLion, LLC ("MoneyLion"), and MoneyLion Technologies, Inc. ("MoneyLion Tech") (jointly, the "Defendants"), stating as follows:

### DESCRIPTION OF THE CASE

1.    This is an action brought by Mr. Mee against all Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), Florida's Civil Remedies for Criminal Practices Act

("CRCPA"), § 772.101, Fla. Stat., *et seq.*, and against Ishwaaswi, Moneylion and MoneyLion Tech for unjust enrichment.

2.    Plaintiff obtained an online payday loan from www.radiantcash.com ("Radiant Cash"). Until early 2021, Radiant Cash claimed to be owned and operated by Ishwaaswi, a wholly owned subsidiary of LDF Holdings, LLC, a holding company organized under the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "LDF Tribe").

3.    Loans issued through Radiant Cash charged interest exceeding 600% annually – rates which are illegal in most states, including Florida. Indeed, Florida law prohibits usury and caps interest rates at 18% annually.  Interest rates of 45% and higher are deemed a felony. *See* Section 687.071(3), Florida Statutes.  Loans made at usurious rates are void *ab initio* under Florida law.

4.    Radiant Cash's loans were, on paper, made by Ishwaaswi and subject to the laws of the LDF Tribe.  By asserting tribal ownership, and through the use of choice-of-law and arbitration provisions designed to strip consumers of any remedies they may have under state law, MoneyLion and Ishwaaswi sought to avoid state usury laws, such as Florida's.  However, the notion that Radiant Cash was operated primarily by, and for the benefit of, the LDF Tribe is a farce, as the lending scheme was the product of MoneyLion, who was the primary beneficiary of Radiant Cash's loans. MoneyLion merely paid the LDF Tribe a small percentage of revenue from Radiant Cash's loans in exchange for the guise of tribal ownership.

5.      Defendant Clarity helped facilitate the loansharking enterprise by knowingly providing proprietary and detailed consumer reports to Radiant Cash.

6.      Clarity's data was essential in Radiant Cash's underwriting and evaluation of loan applications, as Clarity knowingly tailors its reports to sub-prime online lenders such as Radiant Cash.

## JURISDICTION AND VENUE

7.      Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1331.

8.      This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court may also exercise diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2).

10.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## PARTIES

### Mr. Mee

11.     Mr. Mee is a natural person who, at all times relevant, resided in Jacksonville, Duval County, Florida.

**Ishwaaswi**

12.     Ishwaaswi, doing business as Radiant Cash (erroneously referred to as "Radiant Credit" in Radiant Cash's lending agreement), is a limited liability company that conducts online lending via its website, www.radiantcash.com.

13.     Ishwaaswi is allegedly reachable at PO Box 1193, Lac Du Flambeau, WI 54538.

14.     Ishwaaswi claims to be wholly owned by the LDF Tribe, who maintains a business office at 418 Old Abe Rd, Lac Du Flambeau, WI 54538.

**MoneyLion**

15.     MoneyLion is a Delaware limited liability company with a primary business address of 30 West 21st St., 9th Floor, New York, NY 10010.

16.     The Delaware registered agent for MoneyLion is National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

**MoneyLion Tech**

17.     MoneyLion Tech is a Delaware corporation with a primary business address of 30 West 21st St., 9th Floor, New York, NY 10010.

18.     The Delaware registered agent for MoneyLion is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

19.     MoneyLion Tech is the parent company to more than 40 subsidiaries, including MoneyLion, LLC.

**Clarity**

20.     Clarity is a Delaware corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

21.     Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 32301.

## FACTUAL ALLEGATIONS

### MoneyLion's Usurious Lending via "Tribally" Owned Radiant Cash

22.     Radiant Cash was a predatory online payday lender offering loans to consumers at annual interest rates ranging from 400% to 800%, with most loans being made at over 600% annual interest.

23.     Radiant Cash was beneficially owned and operated by MoneyLion, a financial technology company ("FinTech") founded in 2013 by its CEO, Diwakar Choubey ("Choubey").

24.     Domain Name Registration records show that on November 11, 2013, radiantcash.com was registered to MoneyLion LLC, 11 Patricia Way, Kendall Park, NJ 08824, phone (917) 971-6064, email dc@moneylion.com. **SEE PLAINTIFF'S EXHIBIT A.**

25.     The "dc" in the email address is short for Diwakar Choubey, the CEO of MoneyLion.

26.    The address 11 Patricia Way, Kendall Park, NJ 08824 was Choubey's home address at the time.

27.    Initially, MoneyLion made loans under its own name, as well as via Radiant Cash, at interest rates clearly and obviously far in excess of what state laws allowed.

28.    For example, MoneyLion made loans to residents of Virginia at rates as high as 359%, and did so without being licensed by Virginia's Bureau of Financial Institutions. See *Commonwealth of Virginia, Ex Rel. Mark R. Herring, Attorney General, v. Moneylion of Virgina LLC*, Circuit Court for the City of Richmond, February 5, 2018.

29.    MoneyLion also made loans to Florida consumers at interest rates of 390% and higher under its own name, offering a product called "LionLoans."

30.    MoneyLion also made loans to consumers in Florida through Radiant Cash.

31.    According to radiantcash.com, its loans "are offered by Ishwaaswi, LLC dba RadiantCash."

32.    As aforementioned, Ishwaaswi is owned by the LDF Tribe, a Federally Chartered Sovereign American Indian tribe.

33.    In 2008, the LDF Tribe issued $50 million in bonds and entered into a Trust Indenture to refinance and consolidate debts associated with the Lake of the Torches Casino Facility, and to build a riverboat casino, hotel and Bed & Breakfast. *Wells Fargo Bank N.A. v. Lake of the Torches Econ. Dev. Corp.* 677 F. Supp. 1056, 1057 (E.D. Wis. 2010).

34.     The project was "plagued with problems since it began" and never generated the income needed to pay the bonds. Instead, the LDF Tribe was not only unable to make the bond payments, but "was forced to reduce and eliminate many programs that [were] important to the health and welfare of the tribal members." *Id* at 1057-1058.

35.     The LDF Tribe attempted to restructure the bonds in 2009 but was unsuccessful.

36.     The LDF Tribe stopped making payments on the bonds in 2009, alleging that its contract with its lender effectively created a management contract in violation of the Indian Gaming Regulation Act. *Id.* at 1059.

37.     In 2013, facing dire economic circumstances, the LDF Tribe looked for other ways to shore up its finances.

38.     In May 2013, the LDF Tribe set about establishing an internet lending operation which would offer short-term, high-interest-rate loans to consumers via the internet.

39.     However, given the LDF Tribe's poor economic situation and credit history, it was unable to obtain credit from traditional sources to fund its new payday lending operations.

40.     As of May 2013, the LDF Tribe had neither experience in payday lending, nor knowledge of how to underwrite, collect, or service payday loans.

41.     An article published in the Tribe's newsletter, *Inwewin*, in July 2013 noted that the LDF Tribe had embarked on a new internet lending business.

42.     The July 2013 article stated, "the [LDF Tribe] has partnered with one of the largest and most experienced lending companies." *Id.*

43.     In fact, the LDF Tribe entered into agreements with several non-tribal owners of internet lending companies, including, without limitation, MoneyLion.

44.     For each of these agreements, the LDF Tribe, through its wholly owned subsidiary LDF Holdings, created an LLC, the operations of which were then turned over to its investors.

45.     Ishwaaswi was one such LLC.

46.     Most of the LLCs are named after words in the LDF Tribe's native Ojibwe language to further the façade of tribal ownership, *e.g.,* Ishwaaswi means "eight."

47.     These LLCs claim to be economic arms of the LDF Tribe, as a legitimate economic "arm of the tribe" would be entitled to assert the Tribe's sovereign immunity.

48.     In exchange for the use of the LDF Tribe as a purported shield from state law, the investors in these LLCs agreed to pay the Tribe a small percentage – almost always less than 3% – of each loan they made to a consumer.

49.     The LDF Tribe, in essence, rented out its name, allowing others to conduct business under it.

50.     Brent McFarland, the LDF Tribe's director of business development, told the *Milwaukee Journal Sentinel* in 2013 that "we're looking for ways to leverage (the tribe's) sovereignty" for profit. Cary Spivak, *Lac du Flambeau Chippewa enter payday loan*

*business with eye to online gambling*, Milwaukee Journal Sentinel, Dec. 29, 2013, http://archive.jsonline.com/business/lac-du-flambeau-chippewa-enter-payday-loan-business-with-eye-to-online-gambling-b99164952z1- 237906421.html.

51.     Agreements under which a non-tribal company attempts to circumvent state and federal laws which would otherwise prohibit usurious loans, by licensing the tribe's name / identity, are commonly referred to as "Rent-A-Tribe" schemes.

52.     Under such schemes, as here, the tribal lending entity is usually a mere "front" for what is actually an illegal lending scheme; the Native American tribe involved maintains control of the operations on paper, but the overwhelming majority of profit is retained by the non-tribal investors, who provide the underwriting software and all of the leads to the supposedly-tribal lender.

### MoneyLion's Role with Radiant Cash

53.     While LDF Holdings owned Ishwaaswi on paper, the primary beneficiary of Radiant Cash's loans was MoneyLion Tech, and its subsidiaries.

54.     Decisions about all key aspects of the lending business – from who to buy leads from, which credit reporting agencies credit reports are obtained from, underwriting analytics, collection methods, marketing, and even factors like which states to lend money in – were made by MoneyLion Tech, or one of its more than three-dozen subsidiaries.

55.     In 2014, a call center employing over 20 phone agents opened in Isabel, South Dakota, called Dakota Service Center; the CEO was Carol Laib ("Laib").

56.    Laib's online resume on LinkedIn states that she was the "Director of Operations-Radiant Cash" at the Dakota Service Center in Isabel, South Dakota, between April 2014 and September 2016.

57.    Simultaneous to this, Laib held the position of Managing Director of Salt Lake City Operations at MoneyLion in Salt Lake City, Utah.

58.    Archives of MoneyLion's now-discontinued website, LionLoans (www.lionloans.com), show that when LionLoans was still active, it contained a contact address in the small town of Isabel, South Dakota – the same location as Laib's call center.

59.    A listing with the Better Business Bureau for MoneyLion also indicates an address in South Dakota.

60.    The online resume of Samantha Goldade indicates that she worked for MoneyLion between July 2014 and February 2018: first as a manager at its Dakota Service Center until July 2015, and then as a manager at MoneyLion.

61.    Thus, the Dakota Service Center was funded and managed by MoneyLion.

62.    At all times relevant, MoneyLion maintained offices in Kuala Lumpur, Malaysia, and New York City.

63.    The online resume of Christopher Loganathan, Software Architect, Selangor, Malaysia, indicates he worked on the Radiant Cash website while employed by MoneyLion as a Senior Software Engineer Team lead.

64.     While at MoneyLion, Loganathan helped develop a "website which manages USA customers loan application via these websites… the first part which is the type of loans offered to customers. The loan products are called as RadiantCash and LionLoans."

65.     Thinegan Ratnam is the Director of IT Infrastructure and Security at MoneyLion in Kuala Lumpur, Malaysia, and he also worked on RadiantCash.com while employed with MoneyLion.

66.     On his blog, Ratnam states "Moneylion Inc, a short term loans provider. The company managed to release Moneylion.com, Lionloans.com, Radiantcash.com."

**Defendants Make Illegal, Usurious Loan to Mr. Mee and Collect Such Loan**

67.     On or around December 1, 2019, Mr. Mee obtained a loan of, on information and belief, $500 from Radiant Cash, at an annual interest rate exceeding 500% ("the Loan").

68.     The "loan ID" assigned by Radiant Cash was RC-I-30219780.

69.     The Loan far exceeded the maximum lawful interest rate in Florida and is thus an *unlawful debt* as defined under the CRCPA, § 772.102(2)(a)(3), Fla. Stat.

70.     Likewise, the Loan charged interest in excess of 36%, and thus meets the definition of an *unlawful debt* under RICO, 18 U.S.C. § 1961(6).

71.     In determining whether to issue the instant Loan, MoneyLion Tech, likely through a subsidiary, obtained multiple credit reports from Clarity.

72.    MoneyLion Tech, likely through a subsidiary, began initiating ACH debits from Mr. Mee's checking account in mid-December 2019, and every two weeks after this, withdrawing payments to cover usurious interest and principal.

73.    As the interest rate on Mr. Mee's Loan vastly exceeded the maximum lawful interest rate in Florida, the making, and collection, of the Loan constituted a felony pursuant to § 687.071(3), Fla. Stat.

74.    Thus, the Defendants engaged in a pattern of criminal activity against Mr. Mee.

**Illegal Loans Took Place in Florida; Subject to Florida Law**

75.    At the time of Mr. Mee's Loan, Radiant Cash's web server's IP address was 54.84.7.44, which corresponds to a physical location in Ashburn, Virginia, more than 1,000 miles from the LDF Tribe's reservation. **SEE PLAINTIFF'S EXHIBIT B.**

76.    A significant majority of the transaction occurred within the State of Florida – from completing the application to receiving the funds.

77.    Mr. Mee, like most Radiant Cash customers, acquired the Loan without leaving his home. The Loan proceeds were deposited into his bank account in Florida.

78.    Mr. Mee has never set foot on LDF tribal land in Wisconsin.

79.    Thus, as the Loan was requested and obtained in Florida, the proceeds of the Loan were wired to a Florida bank, payments were debited from a Florida bank, and collection emails and phone calls were made to Mr. Mee at his home in Florida, for all reasonable intents and purposes, the Loan occurred in Florida and is governed by the laws of the State of Florida.

**MoneyLion Fails to Disclose Its Involvement of Radiant Cash to Investors**

80.    Radiant Cash ceased operations in early 2021.

81.    Shortly thereafter, in September 2021, MoneyLion Tech became a publicly-traded company, trading on the New York Stock Exchange under the ticker ML.

82.    When MoneyLion Tech filed paperwork in 2021 with the Securities and Exchange Commission indicating it intended to offer shares of stock on a publicly-traded exchange, at no point did MoneyLion Tech disclose to potential investors in its prospectus that it was involved in operating Radiant Cash, whose interest rates were so high that almost every state would consider the loans unlawful.

83.    Disclosures of this type of risk are legally-required by the Securities Act of 1933, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and other federal statutes requiring publicly-listed companies to disclose to investors any prior business activities which could materially affect the share price of the company.

84.    MoneyLion Tech ceased operations of Radiant Cash and intentionally omitted its connection to Radiant Cash because it knew Radiant Cash's loans were illegal in a majority of states, including Florida.

**Clarity Knowingly Facilitates Loansharking**

85.    Clarity is a nationwide consumer reporting agency which primarily services the needs of online payday lenders like Radiant Cash – *e.g.*, lenders making short-term, small-dollar loans at triple-digit interest rates.

86.     Clarity maintains terabytes of proprietary data specifically tailored to assist online, subprime lenders in evaluating potential borrowers, including consumers' checking account histories, employment and salary data, and past payday loan experiences.

87.     Clarity then supplements this data with information from its parent company, Experian Information Solutions, Inc. ("Experian"), one of the "Big 3" nationwide CRAs, as well as with data from other specialty CRAs, including Chex Systems.

88.     Clarity merges its own data with that obtained from Experian and Chex Systems into one report, which it then sells to the online lender.

89.     Indeed, on December 1, 2019, the date Mr. Mee applied for his Radiant Cash loan, Clarity sold three consumer reports regarding Mr. Mee to Radiant Cash, records of which were maintained by Clarity:

| | | | |
|---|---|---|---|
| 12/1/2019 11:28:23 am EST kx5sbvv3e6 | Credit Application | Online Installment Loan | Radiant Cash |
| 12/1/2019 11:28:20 am EST sajhdqg1dj | Credit Application | Online Installment Loan | Radiant Cash |
| 12/1/2019 11:28:19 am EST ykjmgk5y51 | Credit Application | Online Installment Loan | Radiant Cash |

90.     Clarity has extensive policies in place to conduct due diligence on potential new customers, which includes, in most cases, sending an investigator to the primary business office of the lender.

91.     In situations where a lender is "tribally" owned, but obtains consumer reports through a non-tribal service provider, Clarity typically sends its investigator to the offices of the service provider.

92.     Clarity also examines the states the lender does business in, and the lender's website, including pages which show the interest rates, terms, and fees assessed.

93.     Clarity has had numerous lawsuits filed against it concerning its provisioning of credit reports to online payday lenders with sham tribal affiliation.

94.     Clarity has also produced several detailed reports for the online lending industry, such as its 2019 *Alternative Financial Services Lending Trends Insights into the Industry and its Consumers*, which it stated analyzed 350 million loan applications and 25 million loans. Most of the loans were small-dollar, short-term loans made by online lenders.

95.     Clarity thus knew, when furnishing a consumer report regarding Mr. Mee, that the data it was providing was in connection with the making of a loan at a triple-digit interest rate.

96.     Clarity's assistance in Radiant Cash's "rent-a-tribe" scheme is of critical importance.

97.     Absent the trove of data Clarity knowingly supplied for use by Radiant Cash, no such loan could have, or would have, been made to Mr. Mee.

98.     Mr. Mee has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## CLASS ACTION ALLEGATIONS

99.    Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as:

**The "Florida Loan Class":**

**All natural persons within the State of Florida who obtained a loan from Radiant Cash within the past five (5) years preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loan exceeded 25 percent (25%).**

**The "National Loan Class":**

**All natural persons within the United States of America who obtained a loan from Radiant Cash within the past four (4) years preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loan exceeded ninety percent (90%).**

**The "Clarity National Class":**

**All natural persons within the United States of America whom Clarity sold a consumer report regarding, for use by Radiant Cash in conjunction with a loan application, within the last four (4) years preceding the filing of this Complaint.**

**The "Clarity Florida Class" (together with the Clarity National Class, the National Loan Class, and the Florida Loan Class, the "Classes"):**

**All natural persons within the State of Florida whom Clarity sold a consumer report regarding, for use by Radiant Cash in conjunction with a loan application, within the last five (5) years preceding the filing of this Complaint.**

100.    Excluded from the Class are the Defendants and any of their officers, directors, and employees.

101.    Plaintiff reserves the right to modify or amend the class definitions before the Court determines whether certification is appropriate.

102.   **Numerosity.** The Class members are so numerous that joinder of all of them is impractical. Radiant Cash was heavily marketed throughout Florida and the United States and made a considerable number of loans to consumers throughout. Although the precise number of members in each class is unknown, on information and belief, there are at least 10,000 members of the National Loan Class, 10,000 members of the National and Florida Clarity Classes, and 1,000 members of the Florida Loan Class, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  The class members may be notified of the pendency of this action by published or mailed notice.

103.   **Existence and Predominance of Common Questions of Law and Fact.** There are questions of law and fact that are common to the Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by RICO and the CRCPA; (b) whether loans made to members of the Class by Radiant Cash amount to unlawful debts as defined by RICO and the CRCPA; (c) whether the Defendants participated in the enterprise through the collection of unlawful debt; (d) whether the Defendants conspired to collect unlawful debts; (e) whether Plaintiff and the Class members were harmed by the Defendants; and whether the Defendants were unjustly enriched at the expense of Plaintiff and the Class members.

104.   **Typicality.** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal

theories. Radiant Cash made numerous loans to consumers throughout the United States, including Florida, charging interest in excess of state interest rate caps and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

105. **Adequacy of Class Representation.** Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over 1,000 consumer cases under consumer protection statutes, including RICO and the CRCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

106. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO and the CRCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

## COUNT I
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)

### All Defendants, All Classes

107.    Plaintiff repeats and realleges paragraphs 1 - 106 as if fully set forth at length herein.

108.    Defendants are corporate entities and persons as defined by 18 U.S.C. § 1961(3) and within the meaning of 18 U.S.C. § 1962(c).

109.    18 U.S.C. § 1961(6) defines an "unlawful debt" as any debt which is unenforceable under State or Federal law in whole or in part as to the principal or interest, because of the laws relating to usury and was incurred in connection with the business of lending money at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

110.    18 U.S.C. § 1962(a) includes as prohibited activity any person who receives income derived directly or indirectly from a pattern of racketeering activity, or through collection of an unlawful debt.

111.    18 U.S.C. § 1962(c) prohibits any person associated with any enterprise from conducting, participating directly or indirectly, in the conduct of the enterprise's affairs through collection of unlawful debt.

112.   As described in detail herein, the Defendants are a group of individuals associated in fact, although they are not a single legal entity. Together, the Defendants worked toward a common goal of operating Radiant Cash.

113.   The Defendants each participated in the enterprise, in violation of 18 U.S.C. § 1962(c). Specifically, among other conduct, MoneyLion and MoneyLion Tech provided the underwriting software and leads for operating Radiant Cash, and otherwise controlled the day-to-day operations, Ishwaaswi provided a guise of tribal ownership so as to avoid state prosecution and so as to invoke tribal law, and Clarity provided the reams of consumer data so as to evaluate borrowers and ensure profitability.

114.   Radiant Cash operated across state lines, making loans to consumers through the United States. As such, the Defendants' conduct involved interstate commerce.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

a.   Certification for this matter to proceed as a class action;

b.   Treble all amounts paid by Plaintiff and the putative class members towards their Radiant Cash Loans, pursuant to 18 U.S.C. § 1964(c);

c.   Reasonable attorneys' fees and costs;

d.   An order voiding any remaining Radiant Cash loans made to Plaintiff or Plaintiff and the Classes; and

e.   Such other and further relief the Court may deem just and proper.

## COUNT II
## <u>VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)</u>

### All Defendants, All Classes

115.   Plaintiff repeats and realleges paragraphs 1 - 106 as if fully set forth at length herein.

116.   The loans issued by Radiant Cash to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

117.   The Defendants violated § 1962(d) of RICO by conspiring with each other, and other persons, to issue and collect unlawful debts through Radiant Cash.

118.   The Defendants each took actions in furtherance of this conspiracy.  For example, at various times, the Defendants have: (a) issued a loan to Plaintiff and the Class members; (b) requested and obtained consumer credit reports regarding potential borrowers; (c) initiated ACH deposits and withdrawals to the Class members' bank accounts; (d) claimed ownership of Radiant Cash to provide a guise of tribal; and/or (e) provided the underlying data to ensure Radiant Cash's profitability.

119.   The Defendants also each knew the ultimate goal of the enterprise – to make and collect loans charging well in excess of 25% APR.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

a.      Certification for this matter to proceed as a class action;

b.  Treble all amounts paid by Plaintiff and the putative class members towards their Radiant Cash Loans, pursuant to 18 U.S.C. § 1964(c);

c.  Reasonable attorneys' fees and costs;

d.  An order voiding any remaining Radiant Cash loans made to Plaintiff or Plaintiff and the Classes; and

e.  Such other and further relief the Court may deem just and proper.

## COUNT III
## <u>VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.</u>

**All Defendants, Florida Loan Class and Clarity Florida Class, only**

120.  Plaintiff repeats and realleges paragraphs 1 - 106 as if fully set forth at length herein.

121.  Radiant Cash's loans each charged interest in violation of Chapter 687, Fla. Stat.

122.  Violations of Chapter 687 amount to "criminal activity" as defined by § 772.102(1)(11), Fla. Stat.

123.  The Defendants are a group of individuals associated in fact, although they are not a single legal entity. Together, the Defendants worked toward a common goal of operating Radiant Cash.

124.  The Defendants violated § 772.103(3), Fla. Stat., when they each participated in the enterprise, which enterprise conducted a pattern of criminal activity.  At various times, the Defendants: (a) issued a loan to Plaintiff and the Class members; (b) requested and obtained consumer credit reports regarding potential

borrowers; (c) initiated ACH deposits and withdrawals to the Class members' bank accounts; (d) claimed ownership of Radiant Cash to provide a guise of tribal; and/or (e) provided the underlying data to ensure Radiant Cash's profitability.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

a. Certification for this matter to proceed as a class action;

b. Treble all amounts paid by Plaintiff and the putative class members towards their Radiant Cash Loans, pursuant to § 772.104, Fla. Stat.

c. Reasonable attorneys' fees and costs;

d. An order voiding any remaining Radiant Cash loans made to Plaintiff or Plaintiff and the Classes; and

e. Such other and further relief the Court may deem just and proper.

**COUNT IV**
**VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.**

**All Defendants, Florida Loan Class and Clarity Florida Class, only**

125. Plaintiff repeats and realleges paragraphs 1 - 106 as if fully set forth at length herein.

126. Radiant Cash's loans each charged interest in violation of Chapter 687, Fla. Stat.

127. Violations of Chapter 687 amount to "criminal activity" as defined by § 772.102(1)(11), Fla. Stat.

128.    The Defendants are a group of individuals associated in fact, although they are not a single legal entity. Together, the Defendants worked toward a common goal of operating Radiant Cash.

129.    The Defendants violated § 772.103(4), Fla. Stat., when they each conspired to make and collect loans in violation of Chapter 687, Florida Statutes.

130.    The Defendants each took actions in furtherance of this conspiracy. At various times, the Defendants: (a) issued a loan to Plaintiff and the Class members; (b) requested and obtained consumer credit reports regarding potential borrowers; (c) initiated ACH deposits and withdrawals to the Class members' bank accounts; (d) claimed ownership of Radiant Cash to provide a guise of tribal; and/or (e) provided the underlying data to ensure Radiant Cash's profitability.

131.    The Defendants also each knew the ultimate goal of the enterprise – to make and collect loans charging well in excess of 25% APR.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

 a. Certification for this matter to proceed as a class action;

 b. Treble all amounts paid by Plaintiff and the putative class members towards their Radiant Cash Loans, pursuant to § 772.104, Fla. Stat.

 c. Reasonable attorneys' fees and costs;

 d. An order voiding any remaining Radiant Cash loans made to Plaintiff or Plaintiff and the Classes; and

 e. Such other and further relief the Court may deem just and proper.

**COUNT V**
**UNJUST ENRICHMENT**

**Ishwaaswi, MoneyLion Tech, and MoneyLion, only**
**Florida Loan Class and National Loan Class, only**

132.    Plaintiff repeats and realleges paragraphs 1 - 106 as if fully set forth at length herein.

133.    The loans issued by Radiant Cash to Plaintiff and the Classes each charged an interest rate which rendered the loan void and unenforceable due to applicable state law.

134.    Plaintiff conferred a benefit on Ishwaaswi, MoneyLion Tech, and MoneyLion when they repaid the loans, as they had no obligation to do so and, therefore, Ishwaaswi, MoneyLion Tech, and MoneyLion were owed nothing.

135.    Ishwaaswi, MoneyLion Tech, and MoneyLion knew or should have known of the benefit; and Ishwaaswi, MoneyLion Tech, and MoneyLion have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans such that it would be inequitable for Ishwaaswi, MoneyLion Tech, and MoneyLion to retain the money they received.

136.    Accordingly, on behalf of themselves and all other consumers similarly situated, Plaintiff and the putative Classes seek to recover from Ishwaaswi, MoneyLion Tech, and MoneyLion, all amounts repaid on their Radiant Cash loans.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

a.  Certification for this matter to proceed as a class action;

b.  All amounts paid by Plaintiff and the putative class members towards their Radiant Cash Loans; and,

c.  Such other and further relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Mr. Mee hereby demands a jury trial on all issues so triable.

Respectfully submitted on June 4, 2024, by:

SERAPH LEGAL, P. A.

/s/ Bryan J. Geiger
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
2124 W. Kennedy Blvd., Ste. A
Tampa, FL 33606
Tel: 813-321-2348
Fax: 855-500-0705
Counsel for Plaintiff

/s/ Christian E. Cok
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@SeraphLegal.com
Tel: 813-567-1230 (ext. 307)

Counsel for Plaintiff

**<u>ATTACHED EXHIBIT LIST</u>**
A       Radiant Cash's Domain Registration Records
B       Radiant Cash's IP Address Server Location